**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 1:25-CR-138 |
| Plaintiff, | : | JUDGE McFARLAND |
| v. | : | |
| SAMUEL SAXON, | : | **GOVERNMENT'S MOTION IN LIMINE TO ADMIT OTHER-ACTS EVIDENCE UNDER RULE 404(b)** |
| Defendant. | : | |

In advance of the trial scheduled to begin on February 23, 2026, the United States moves *in limine* to admit, under Federal Rule of Evidence 404(b), testimony and video recordings that are evidence of the defendant's identity.

## BACKGROUND

On December 5, 2025, officers with the Cincinnati Police Department (CPD) responded to defendant Samuel Saxon's residence after, at around 2:58 p.m., a 911 caller reported witnessing a man holding a woman in a headlock in the hallway. In an interview shortly thereafter, the witness said the man had dragged the woman down the hall in a chokehold before forcing her into an apartment. The witness reported that he/she had then heard sounds consistent with a physical assault coming from within the apartment.

The woman dragged into the apartment was later identified as Saxon's significant other, Individual 1, and the apartment was identified as Saxon's.

Law enforcement later obtained three short videos that a witness had taken in the hallway of the apartment building at around the time of the 911 call. Here is what the videos show:

1

December 5 Video 1 (GOV 009): In this video taken from the hallway of Saxon's apartment building at around 2:58 p.m., a woman can be heard yelling, "I don't know where the fucking check is!" A man can then be heard yelling, loudly enough to be heard through a closed door and down the hallway, "Think! Think!" The woman can then be heard saying something about "your bedroom."

December 5 Video 2 (GOV 010): In this video taken in the hallway a minute later, at 2:59 p.m., the same woman can be heard screaming. Then the same man as heard in the first video can be heard yelling, "Fuck you! Fuck you! Fuck you! Fuck you! I gave you a chance, bitch."

December 5 Video 3 (GOV 011): In this video taken in the hallway at 3:04 p.m., the same man can be heard yelling, "Get up!" The woman can then be heard screaming. Then the man can be heard saying, "Get the fuck up. Get up."

The witness who took the videos is expected to testify that the sounds they captured were coming from inside Saxon's apartment.

Saxon was arrested at a hotel in the early morning hours of December 6, 2025. During a post-arrest interview shortly thereafter, Saxon made several materially false statements to a DHS-OIG agent, and a federal grand jury later returned an indictment charging him with a violation of 18 U.S.C. § 1001. The charged false statement was Saxon's representation that, in sum and substance, he had not interacted in person with Individual 1 on December 5, 2025.

## LEGAL STADARD

Federal Rule of Evidence 404(b) provides that evidence of another "crime, wrong, or act"—i.e., an occurrence other than the crime charged in the Indictment—may be admissible at trial so long as it is not being introduced to show that the defendant had a propensity to act in a

certain way. *See* Fed. R. Evid. 404(b)(2). The Rule provides a non-exclusive list of circumstances in which such evidence may be admissible, such as to prove identity, knowledge, intent, and absence of mistake. *Id.*

The Sixth Circuit has established a three-step process for determining the admissibility of other-acts evidence under Rule 404(b):

> *First,* the district court must decide whether there is sufficient evidence that the other act in question actually occurred. *Second,* if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. *Third,* if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003); *accord United states v. Allen*, 619 F.3d 518, 523 (6th Cir. 2010).

Rule 404(b) is therefore "a rule of inclusion rather than exclusion," *United States v. Dunnican*, 961 F.3d 859, 874 (6th Cir. 2020), because "only one use" (propensity) is forbidden, and there are many other permitted uses, *United States v. Carney*, 387 F.3d 436, 450 n. 11 (6th Cir. 2004).

## ARGUMENT

To convict Saxon of the charge in the Indictment, the government is required to prove, among other things, that Saxon *did* interact in person with Individual 1 on December 5, 2025, such that his statements and representations to the contrary were false.

To meet its burden, the government will seek to admit the three videos described above that capture the sound of a loud altercation between a man and a woman inside Saxon's apartment on December 5, 2025. These three videos (the "December 5 videos"), taken just hours before Saxon made his false statements, are intrinsic evidence of the crime—not "other acts" evidence subject to Rule 404(b). However, because the December 5 videos do not capture

Saxon's face, but rather only his voice, the government must present other evidence to prove that the voice on the video is Saxon's, and not someone else's—and therefore that he was the man inside the apartment on December 5, 2025. Put another way, the government must prove the *identity* of the man whose voice is captured on the December 5 videos.

To prove that the male voice heard on the December 5 videos is Saxon's, the government seeks to introduce following evidence:

- Testimony from neighbors that, before December 5, 2025, they had, on several occasions, heard a man and a woman yelling inside Saxon's apartment. These witnesses are further expected to testify that they recognized the voices yelling on December 5, 2025, as the same voices they had heard on prior occasions.
- The following five videos taken on April 26, 2025, and testimony showing that they were taken in the hallway of Saxon's apartment building and captured sounds coming from inside his apartment:
    - <u>April 26 Video 1 (GOV 004)</u>: In this video, taken at approximately 6:42 p.m., a man can be heard yelling, "Get out. Get the money and go. Get the fuck out. Get out! I swear to God, you're done. Get the fuck out." A woman's voice can also be heard saying, "I know – I'm going to get the fuck out in just a second." Then the man can be heard saying, "No phone, no nothing."
    - <u>April 26 Video 2 (GOV 005)</u>: In this video, taken at approximately 6:47 p.m. in the same location, the same man can be heard saying, "No, no, no, noooo," loudly enough to be heard clearly in the hall. The woman's voice can be heard faintly. The man can then be heard saying something about a shower and then

saying, "Grab your shit, and get the fuck out." The man then says, "Go, now!" Then, very loudly, "Get out!"

- April 26 Video 3 (GOV 006): In this video, taken at 7:15 p.m., the woman can be heard saying, "I just need to [UI]!" Then the man can be heard yelling, "No, you don't!" Then, more quietly, the man can be heard saying: "Get up. Up. Up, in here. Get your suitcase, there's your shit. Use this. Here you go."

- April 26 Video 4 (GOV 007): In this video, taken at approximately 8:23 p.m., the man can be heard yelling, "Look at me! Look at me! It's over! You're gone! You're out! Get your [UI] and get out."

- April 26 Video 5 (GOV 008): In the selected clip from this video, taken at approximately 8:25 p.m., the man can be heard yelling, "Get out now! It's done!"

- Testimony showing that CPD officers responded to Saxon's apartment on April 26, 2025 (the same day the videos described above were taken), and found Individual 1 sitting in the hallway outside Saxon's apartment. The government expects an officer's testimony to show, in sum and substance, that she heard Individual 1 speaking to someone through the front door of Saxon's apartment, and that Individual 1 was asking "Sam" to let her in. The government further expects the evidence to show that when the officer addressed the person inside the apartment as "Sam," a male voice responded to the officer's questions.

- Clips from two videos recovered from Individual 1's iCloud account. The government expects the case agent to testify that, in her review of Individual 1's iCloud account,

5

she found many examples of Individual 1 surreptitiously videorecording when Saxon was yelling. The government seeks to admit clips from two of those videos, namely:

- iCloud Video "IMG_0123.MOV" – Clip 1 (GOV 024): The first clip from this video, taken on May 10, 2024, captures Saxon saying, "Get out. You're worthless. Get out. Get the fuck out. No, no, no, no, you drunk bitch. Look at you. Have you looked at yourself, lately? Have you?" Individual 1 starts to say, "I just—" Saxon then cuts her off, saying, "'I just put makeup on [UI] I can do my hair.' Get -- get out. The door's right there."

- iCloud Video "IMG_0123.MOV" – Clip 2 (GOV 024a): The second clip from the same video captures Saxon saying, "Get the fuck out. Get the fuck out of my home, you fucking loser bitch."

- iCloud Video "IMG_0023.MOV" (GOV 025): This clip, from a longer video taken on July 31, 2023, captures Saxon speaking with Individual 1. Individual 1 is calm, and Saxon is not yelling at her; however, he is yelling his half of the conversation. Among other things, he yells, "I'm so sick of this! I'm so sick of your dumbass friend Madison. Rest in peace, Cesar. Fuck you, [redacted]! You people are insane! You Arlington motherfuckers are insane! [. . .] It's disgusting! It disgusts me!"

Under the three-part test the Sixth Circuit set out in *Jenkins*, all of the evidence described above is admissible under Rule 404(b) as evidence of Saxon's identity as the person who was yelling at Individual 1 inside his apartment on December 5, 2025.

Under the first prong of the *Jenkins* test, the Court must find that there is sufficient evidence "that the other act in question actually occurred." *Jenkins*, 345 F.3d at 937. Here, there

is ample evidence that the acts in question occurred, because they are all caught on film and/or supported by witness testimony. Although the April 26 Videos do not capture Saxon's face, there is substantial corroborating evidence showing that the voice on those videos belongs to him, including (1) that the witness who took the videos will testify that the sounds were coming from Saxon's apartment; (2) that a police officer will testify that she arrived to find Individual 1 talking through the door with "Sam"; (3) that a police officer will testify that a male inside the apartment responded to the name "Sam"; and (4) that other evidence will establish that Saxon and Individual 1 were the two people listed on the lease. The government will introduce evidence that the other videos were both obtained from Individual 1's iCloud account and that one of them (although not the excerpted portions) shows Saxon's face. And multiple witnesses will testify about hearing the same voices yelling in Saxon's apartment on prior occasions. This is sufficient evidence for the Court to find that the other acts occurred. *See United States v. Johnson*, 458 F. App'x 464, 470 (6th Cir. 2012) (noting that the testimony of a single witness can be sufficient to conclude that an act occurred, even if that testimony is impeachable); *United States v. Norris*, No. 1:16-cr-093, 2017 WL 1230466, *5 (S.D. Ohio Apr. 2, 2017) (holding that an officer's testimony, together with an online chat transcript, was sufficient to establish, for purposes of a Rule 404(b) analysis, that a prior online chat had occurred).

      Under the second prong of the *Jenkins* test, the Court must determine whether the evidence is probative of a material issue other than character. *Jenkins*, 345 F.3d at 937. Here, the government is relying on these "other acts" to prove Saxon's identity as the person whose yelling voice was captured on the December 5 videos, and therefore that he was lying when he said he had not interacted with Individual 1 in person—the central question in this false-statement case. The government understands from defense counsel that Saxon is not willing to stipulate that it is

his voice captured on the December 5 videos. And in cases like this one, "when the issue is one related solely to identity," the Sixth Circuit "has overwhelmingly approved the admission of 'other acts' evidence." *United States v. Perry*, 438 F.3d 642, 648 (6th Cir. 2006).

In the December 5 videos, the man is yelling aggressively, and his voice is distinctive. The other videos the government seeks to introduce capture this distinctive manner of yelling and therefore provide strong evidence of his identity as the person captured on the December 5 videos. The April 26 videos are almost indistinguishable from those on December 5, as they too are taken from the hallway and capture a loud argument between Saxon and Individual 1 inside Saxon's apartment. The other videos, recovered from Individual 1's iCloud account, provide additional voice exemplars that are specific to Saxon's "yelling" voice—i.e., the voice captured on the December 5 videos. Finally, the witnesses who are expected to testify that they recognized the voices yelling on December 5 are not able to say that those voices belonged to Saxon and Individual 1, because they do not know Saxon or Individual 1; all they can say is that they recognized the voices because they had heard them yelling inside Saxon's apartment many times before—and this, too, tends to show that it was Saxon, and not someone else, who was there on December 5. *See United States v. Weigand*, Nos. 5:17-cr-00556, 5:20-cr-00248, 2021 WL 4318057 (E.D. Pa. Sept. 23, 2021) (admitting under Rule 404(b), as evidence of identity, several recorded phone calls linked to the defendant; these recordings "g[ave] the jury a voice to compare to the [later] calls" that were part of the scheme); *see also, e.g.*, *Norris*, 1:16-cr-093, 2017 WL 1230466, at *5 (admitting under Rule 404(b) evidence underlying the defendant's prior conviction for attempted unlawful sexual conduct with a minor; there was a "distinctive pattern" of similarities between the two crimes, which was evidence of his identity).

Finally, the Court must perform a Rule 403 balancing test and decide "whether the

8

probative value of the evidence is substantially outweighed by its potential prejudicial effect." *Jenkins*, 345 F.3d at 937. This test is "strongly weighed toward admission." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). And here, the probative value of the videos the government seeks to admit is very high: Saxon's face cannot be seen on the videos from December 5, 2025; the witness who saw the altercation in the hallway does not know him, and the government does not expect him/her to be able to identify him in court; and Individual 1 is not cooperating with the investigation—so the government must prove Saxon's identity through other means. Other videos in which Saxon is yelling in a distinctive way are highly probative of his identity as the man yelling in that same distinctive way on the December 5 videos.

Moreover, the videos the government seeks to introduce are not substantially more prejudicial than probative under Rule 403. Courts commonly introduce evidence of conduct underlying other crimes as evidence of identity under Rule 404(b). *See, e.g.*, *Perry*, 438 F.3d at 649 (affirming the district court's admission of 404(b) evidence relating to separate bank robbery committed under similar circumstances to prove identity); *Norris*, 2017 WL 1230466, at *8 (admitting, as 404(b) evidence of identity, evidence of the defendant's prior attempt to solicit a minor). These videos do not capture Saxon harming Individual 1 or committing a crime; rather, only a loud verbal altercation can be heard, and the argument is not substantially more aggressive than the one from December 5. And in GOV 025, Saxon is not even in an argument with Individual 1; he's simply yelling his half of a conversation in which she is speaking calmly. Additionally, the government has redacted those portions of GOV 008 in which Saxon mentions being "close to killing" Individual 1 and in which Individual 1 yells for help, reducing any potential prejudice.

Finally, a proper limiting instruction "can mitigate the risk of prejudice" from Rule

9

404(b) evidence. *United States v. Abbott*, No. 24-5602, 2025 WL 2237656, at *8 (6th Cir. Aug. 6, 2025); *accord id.* (holding that the district court did not abuse its discretion in admitting Rule 404(b) evidence, in part because it issued a "careful limiting instruction" for each act); *United States v. Dunnican*, 961 F.3d 859 (6th Cir. 2020) (concluding that Rule 404(b) was not unduly prejudicial in part because the district court had "imposed safeguards" by instructing the jury twice that it could consider the evidence only for the proper purpose); *Norris*, 2017 WL 1230466, at *8 (noting that "a limiting instruction that the other acts evidence [relating to the defendant's prior attempted online solicitation of a minor] be considered for purposes of *identity only* should mitigate any danger of unfair prejudice"). Therefore, an instruction from the Court after the admission of each item of "other acts" evidence will further lessen the risk of any unfair prejudice.

The court's analysis in *United States v. Weigand*, Nos. 5:17-cr-00556, 5:20-cr-00248, 2021 WL 4318057 (E.D. Pa. Sept. 23, 2021), is instructive here. In that case, the government alleged that Weigand, a financial advisor, had impersonated several of his clients while making phone calls to various financial institutions to further a fraud scheme. *Id.* at *1. To prove that it was Weigand's voice on calls placed from 2012 through 2014 in furtherance of the fraud, the government moved to admit, under Rule 404(b), several older calls, from 2006 through 2011, that were not part of the charged scheme but on which Weigand identified himself by his first name. *Id.* at *5-*6. The court granted the government's motion, reasoning that, because Weigand denied it was his voice on the calls from 2012 through 2014, the earlier calls were relevant evidence of identity; they would "give the jury a voice to compare to the [later] calls." *Id.* at *6-*7. Because the earlier calls did not capture Weigand committing a crime, they were not unfairly prejudicial. *Id.* Additionally, the Court noted that it would issue a limiting instruction if

10

requested by the defense. *Id.*

Under the reasoning in *Weigand*, and under the *Jenkins* test, as set out above, the evidence described above is admissible under Rule 404(b) as evidence of Saxon's identity.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court admit at trial, pursuant to Rule 404(b), GOV 004 through 008, 24, 24a, and 25, as well as the testimony described above.

    Respectfully submitted,

    DOMINICK S. GERACE II
    UNITED STATES ATTORNEY

    */s/Julie D. Garcia*
    JULIE D. GARCIA (CA 288624)
    ASHLEY N. BRUCATO (0090989)
    Assistant United States Attorneys
    United States Attorney's Office
    221 E. Fourth St. Suite 400
    Cincinnati, OH 45202
    513-684-3711
    Julie.Garcia@usdoj.gov
    Ashley.Brucato@usdoj.gov